FILED & JUDGMENT ENTERED
Steven T. Salata

Feb 02 2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| **Michael Robert Tano** ) | |
| ) | Case No. 13-31465 |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| **Brian E Hadley,** *individually* ) | |
| *and on behalf of* ) | |
| *Hadley-Strader-Tano Associates, Inc.,* ) | |
| ) | |
| ) | |
| Plaintiff, ) | Adversary Proceeding |
| ) | No. 13-03177 |
| v. ) | |
| ) | |
| **Michael Robert Tano** ) | |
| ) | |
| Defendant. ) | |

**ORDER EXEMPTING STATE COURT JUDGMENT DEBT FROM DISCHARGE
PURSUANT TO 11 U.S.C. 523(a)(6)**

**THIS MATTER** came before the Court for trial upon the Complaint of Brian E. Hadley, individually and on behalf of Hadley-Strader-Tano Associates, Inc. (HSTA), collectively plaintiffs, to determine the dischargeability of a state court judgment debt

1

entered against defendant Michael Robert Tano.[1]  For the reasons set forth below, the state court judgment entered against Tano is excepted from discharge in this bankruptcy under 11 U.S.C. § 523(a)(6).

Hadley, Tano, and a third associate, Daniel Strader, entered into a Partnership Agreement to form HSTA, an S Corporation.  HSTA represented companies that manufactured cleaning products.  HSTA sold those products to wholesale distributors on a commission basis.  Hadley was named the managing partner, and the three shared profits and losses equally.[2]  The Partnership Agreement provided that "[t]he Partnership shall be terminated and dissolved upon the vote of a majority in interest of the Partners." Plaintiffs' Ex. 6, at 12, ¶ 14.

Additionally, Hadley, Tano, and Strader entered into a Non-Competition Agreement.  That agreement provided that "[e]ach partner agrees that if he should leave [HSTA] at any time, for a period of two (2) years following the termination date (the 'Non-Competition Period') that he shall not directly or indirectly, either individually or with others, engage or have any interest, as an owner, employee, representative, agent, consultant, or otherwise, in any business which is similar to the business conducted by [HSTA]." Plaintiffs' Ex. 5., at ¶ (1)(a). As part of the Non-Competition Agreement, each of the three "further agree[d] that during the Non-Competition Period he shall not

---

[1] Plaintiffs were represented by counsel, John D. Bice.  Up until trial, Tano was represented by Joseph M. Bochichio and Bryan W. Stone.  Both Tano's attorneys, however, sought permission to withdraw *on the day of trial*.  For financial reasons, Tano had no objection and wished to proceed *pro se*.  Tano appeared to fully understand the implications and consequences of representing himself in this matter, and, at Tano's urging, the Court permitted his attorneys to withdraw.

[2] Originally, defendant agreed to only take thirty percent.  That agreement was subsequently modified.  See Addendum to Partnership Agreement, Plaintiffs' Ex. 6, at 15.

2

solicit the Company's customers or Manufacturer Principals on behalf of him or any other business or entity in competition with the business then conducted by the Company." *Id*. at ¶ (1)(c).

To acquire life insurance on each partner to provide HSTA with funds to purchase a partner's share upon death, Hadley, Tano, and Strader agreed the aggregate value of HSTA's shares was 1.5 times the average of the last three years commissions. By that measure, Hadley's interest was worth approximately $250,000 at the time of the events precipitating this adversary proceeding.

In June 2010, after an apparent dispute, Hadley indicated that he wished to part ways with Strader and Tano and leave HSTA. Hadley suggest that they "develop a plan where [Hadley] is no longer part of the company." Plaintiffs' Ex. 1, at 3, ¶ 11. Then, on July 15, 2010, Tano and Strader offered to purchase Hadley's interest in HSTA for $135,598.97. Plaintiffs' Ex. 10. Hadley declined and, on July 20, 2010, offered to purchase Tano's and Strader's interests pursuant to the same terms they offered to Hadley. They rejected Hadley's counteroffer. *See* Plaintiffs' Ex. 12.

Strader and Tano then began independent discussions that led them to a decision on July 21, 2010 to dissolve HSTA. Plaintiffs' Ex. 8, at 7. That same day, John Camp, Strader's father-in-law filed Articles of Organization for Strader–Tano Associates, LLC (STA), listing Strader and Tano as managers. *See* Plaintiffs' Ex. 9. Like HSTA, STA acts as a cleaning supply manufacturer representative. STA sought to represent many of the same manufacturers that had previously contracted with HSTA. *See* Plaintiffs' Ex. 10.

3

Nine days after the incorporation of STA, Strader and Tano called a HSTA shareholders' meeting for July 30, 2010 at which they voted to dissolve HSTA. Plaintiffs' Ex. 3. Hadley attended the meeting and voted against dissolution. At that time, HSTA had few tangible assets of value. Its primary "assets" were the contracts and relationships it had with the manufacturers it represented. Because of the nature of HSTA's business as a commission based manufacturer representative, dissolving HSTA caused Hadley's ownership interest to become essentially worthless.

As a result, plaintiffs filed suit against STA, Strader, and Tano in North Carolina Superior Court claiming civil conspiracy, breach of fiduciary duty, breach of contract, conversion, unjust enrichment, constructive fraud, usurpation of corporate opportunities, and unfair and deceptive trade practices. Plaintiffs' Ex. 4. Plaintiffs additionally sought punitive damages, an accounting, and the appointment of a receiver. *Id*. The case proceeded to trial, and the state jury concluded that:

1) Strader and Tano took improper advantage of their power as controlling shareholders of HSTA.

2) Hadley and/or HSTA were damaged by the failure of Strader and Tano to discharge their duties as corporate directors and/or officers of HSTA.

3) Strader, Tano, and STA did not act openly, fairly and honestly in bringing about the dissolution of HSTA.

4) Tano and Strader breached their non-compete agreement with Hadley and HSTA by competing with HSTA and/or soliciting HSTA's customers.

5) Strader, Tano, and STA conspired with each other.

*See* Plaintiffs' Ex. 7. The jury determined that Hadley was entitled to $220,133 in damages. The state court entered judgment in favor of Hadley jointly and severally against Strader and Tano for $220,133 with interest. *Id*.

Following entry of the state court judgment, Strader and wife, Sarah Moore Strader, filed bankruptcy in South Carolina. As here, plaintiffs sought entry of an order declaring the state court judgment debt nondischargeable. By order dated November 7, 2014, the Bankruptcy Court for the District of South Carolina, the Honorable Helen E. Burris, "f[ound] that Strader's dissolution of HSTA coupled with his actions in breaching the non-compete agreement combine to produce willful and malicious conduct." Order of November 7, 2014 in Case No. 13-80153-hb, Plaintiffs' Ex. 1, at 17. Thus, Judge Burris concluded that the entire amount of the state court judgment debt was excepted from discharge under 11 U.S.C. § 523(a)(6). *See id*.

Like Strader, Tano also sought relief under Chapter 7 of the Bankruptcy Code in this judicial district. Plaintiffs initiated this adversary proceeding to object to Tano's discharge and the dischargeablilty of the state court judgment debt under 11 U.S.C. §§ 727(a)(4)(A), 523(a)(4), and 523(a)(6). At trial, plaintiffs chose to pursue their claim under 11 U.S.C. § 523(a)(6) only.

Before turning to an analysis under subsection 523(a)(6), we must first consider the effect of the findings that formed the basis of the state court judgment and whether those finding are binding in the current matter via issue preclusion. To reduce unnecessary litigation and promote comity between state and federal courts, federal courts have generally accorded "preclusive effect to issues decided by state courts." *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980). In determining whether the preclusion

5

doctrine applies to a state court judgment, a federal court will apply the law of the state in which the judgment was entered. *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) (applying the Virginia precedent on the doctrine of res judicata). In North Carolina, to successfully assert collateral estoppel, a party must establish "that the earlier suit resulted in a final judgment on the merits, that the issue in question was identical to an issue actually litigated and necessary to the judgment, and that both [defendant] and [plaintiffs] were either parties to the earlier suit or were in privity with parties." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558-59, 681 S.E.2d 770, 773-74 (2009) (quoting *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 429, 349 S.E.2d 552, 557 (1986)).

The elements of issue preclusion are satisfied in this case: Tano was a named defendant in the state court law suit, he participated in the law suit, the jury made findings, and a final judgment was entered. The jury findings were necessary to the damages award and many issues raised in those proceedings were identical to those currently before the Court.

Subsection 523(a)(6) exempts from discharge any debt incurred as a result of "willful and malicious injury by the debtor to another entity or to the property of another entity." "The Supreme Court has held that § 523(a)(6) applies only to 'acts done with *the actual intent to cause injury*.'" *In re Gallagher*, 388 B.R. 694, 701 (W.D.N.C. 2008) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). Meaning, negligent, grossly negligent, or reckless conduct is not sufficient to satisfy the requirements of subsection 523(a)(6). *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 729 (4th Cir. 2006) (citation omitted). Rather, "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61. "The test,

then, is whether the debtor acted with 'substantial certainty' [that] harm [would result] or a subjective motive to cause harm." *Gallagher*, 388 B.R. at 701 (quoting *Parsons v. Parks (In re Parks)*, 91 F. App'x 817, 819 (4th Cir. 2003)).

Applying the evidence presented at trial and the binding findings of the state court jury, it is clear that Tano caused willful and malicious injury to Hadley as defined by the Supreme Court's decision in *Kawaauhau v. Geiger* and its progeny. First, Strader and Tano together "t[ook] improper advantage of their power as controlling shareholders of [HSTA]" and acted unfairly and dishonestly about the dissolution. Plaintiffs' Ex. 7, ¶ 1, 3. By dissolving the company, Hadley's shares became worthless. Tano, knowing the nature of the business and at one time serving as the managing partner, acted with "substantial certainty" that harm to Hadley's interest in HSTA would occur from he and Strader's dishonest and unfair dissolution of HSTA, their breach of the non-competition agreement, and their solicitation of HSTA customers. *Parks*, 91 F. App'x at 819. Put differently, Tano's and Strader's actions essentially deprived Hadley of his ownership interest in HSTA by dissolving the company then forming a new entity that served the exact same purpose and customer base. To conclude that he acted without a substantial certainty of the resulting harm would be unfounded. That harm, as found by the state court jury, amounted to $220,133 plus interest. Accordingly, the state court judgment debt must be exempted from discharge under 11 U.S.C. 523(a)(6).

**SO ORDERED**

This Order has been signed
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.

United States Bankruptcy Court